UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:11-CV-00204-R

MAX ARNOLD & SONS, LLC and
FEDERATED MUTUAL INSUR. CO.                                              PLAINTIFFS

v.

FRIGOGLASS NORTH AMERICA and
SFA SOGUTMA SANAYI, et al.                                               DEFENDANTS

## MEMORANDUM AND ORDER

Before the Court are motions to dismiss by two defendants (DN 15; DN 16). Plaintiffs have responded (DN 19), the defendants have replied (DN 21; DN 22), and Plaintiffs have submitted a sur-reply (DN 25). Certain co-defendants in this action have submitted briefing opposing the present motions to dismiss as well (DN 20). These motions are now ripe for adjudication. For the reasons that follow, they are DENIED. The Court will order a period of jurisdictional discovery, after which these motions may be refiled.

## BACKGROUND

This matter has its origins with a fire that damaged a convenience store in Mayfield, Kentucky, owned and operated by Plaintiff Max Arnold & Sons, LLC ("Max Arnold"). The blaze started in the early morning hours of October 30, 2010, near a reach-in electric cooler located in the store. The complaint alleges, and the parties accept for the purposes of this motion, that the origin of the fire was the cooler's electrical system.

Defendant AHT Cooling System GMBH-NL, Deutchland ("AHT") and Defendant ATC Group, Inc. ("ATC") were distributors of the cooler. Defendant Core-Mark International, Inc. ("Coremark") is a wholesale convenience store food and beverage distributor. Coremark owned

1

the cooler in question and stocked it with food and beverages pursuant to a contractual agreement with Max Arnold.

The present controversy surrounds the manufacturer of the cooler. Before the lawsuit, representatives of Max Arnold discovered an identification plate on the cooler bearing the names of AHT and Defendant SFA Sogutma Sanayi's ("SFA"). SFA is a Turkish corporation engaged in the business of designing, manufacturing, and distributing commercial refrigeration products. SFA is a subsidiary of Frigoglass North America's ("Frigoglass"), a corporation based in Spartenburg, South Carolina, also involved in designing, manufacturing, and distributing commercial refrigeration products. Despite the allegations of Max Arnold that SFA manufactured the cooler in question, the present record is unclear on this pivotal piece of information.

On December 1, 2011, Max Arnold and its insurer, Plaintiff Federated Mutual Insurance Company (collectively "Plaintiffs"), filed this lawsuit in Graves County Circuit Court against the above-named defendants. Plaintiffs seek to recover for the fire damage caused by the faulty cooler. After a timely removal to this court, SFA and Frigoglass moved to dismiss for lack of personal jurisdiction. Both state that they do not have sufficient contacts to Kentucky to justify either specific or general personal jurisdiction.[1]

## STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits a defendant to dismiss for want of personal jurisdiction. In a diversity action, the Court must look to the law of the forum state to determine whether personal jurisdiction exists. *Intera Corp. v. Henderson,* 428 F.3d 605, 615 (6th Cir. 2005); *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996). "A

---

[1] Although SFA and Frigoglass are separate entities, the Court will analyze their motions together. The ultimate decision to grant a period of discovery on personal jurisdiction obviates the need to bifurcate the Court's analysis.

Court's exercise of personal jurisdiction over a nonresident defendant is appropriate only if it meets the states' long-arm statute and constitutional due process requirements." *Henderson,* 428 F.3d at 615. The Court's exercise of jurisdiction comports with due process when the defendant has sufficient minimal contacts such that "traditional notions of fair play and substantial justice are not offended." *Id.* at 615-16 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). The frequency of contacts is not determinative; the defendant's conduct must be such that he or she "should reasonably anticipate being hauled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Kentucky's long-arm statute has been understood to reach the limit permitted by the Constitution, thus the single issue is whether the jurisdiction sought is within the requirements of due process.[2] *Tobin v. Astra Pharm. Prods., Inc.,* 993 F.2d 528, 542-43 (6th Cir. 1993).

"The minimum contacts requirement may be satisfied by a showing of either general jurisdiction or specific jurisdiction." *Fortis Corporate Ins. v. Viken Ship Mgmt.,* 450 F.3d 214, 218 (6th Cir. 2006); *Fairbrother v. American Monument Found., LLC,* 340 F. Supp. 2d 1147,

---

[2] Kentucky's long arm statute provides in pertinent part that:

> (2) (a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
> 1. Transacting any business in this Commonwealth;
> 2. Contracting to supply services or goods in this Commonwealth;
> 3. Causing tortious injury by an act or omission in this Commonwealth;
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;
> 5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth.

KRS § 454.210(2)(a)(1)-(5).

1153 (D. Colo. 2004). General jurisdiction over a nonresident requires a showing of continuous and systematic contacts with the forum state. *Aristech Chemical Intern. Ltd. v. Acrylic Fabricators Ltd.,* 138 F.3d 624 (6th Cir. 1998); *see Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415 (1984). In order for a nonresident to be subject to the jurisdiction of the court under specific jurisdiction, i.e., for specific claims asserted, those claims must arise out of or be related to activities that were significant and purposely directed by the defendant at a resident of the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73 (1985). The following criteria have historically been employed to determine if specific personal jurisdiction is appropriate:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Tobin,* 993 F.2d at 542-43 (quoting *Theunissen v. Matthews,* 935 F.2d 1454, 1460 (6th Cir. 1991)).

## DISCUSSION

Plaintiffs' complaint provides the barest of foundations regarding SFA's and Frigoglass's connection to the present controversy. In the complaint, Plaintiffs allege that SFA and Frigoglass transact business in Kentucky and are involved in "designing, manufacturing, producing, advertising, marketing, distributing, and selling open aired coolers including that certain open air cooler . . . placed in the business premises of [Max Arnold]." Complaint, DN 1-1 ¶¶ 4-5, 10-11. Absent from the complaint and present record is any indication about who manufactured the cooler, who was responsible for its upkeep, and how it came to reside in the convenience store. In response to these motions, Plaintiffs managed to attach several exhibits

demonstrating Frigoglass is a multinational corporation with operations in the United States, that it launched a joint business venture with Coca Cola Recycling LLC in Atlanta, Georgia, and it offers on-site preventative maintenance for its refrigeration units.  DN 19-2 p. 1-2; DN 19-3 p. 1; DN 19-7 p. 11.

SFA and Frigoglass respond to the allegations in Plaintiffs' complaint with their own general assertions.  Mehmet Cimsir, the director of SFA, contends that the company did not construct the allegedly defective cooler "directly for" residents of Kentucky.  Cimsir Affidavit, DN 15-1 ¶ 3.  He indicates SFA, in the state of Kentucky, does not advertise or sell products, engage in business, maintain an office, derive income from sales, promote or market its products, or pay taxes.  Cimsir Affidavit, DN 15-1 ¶¶ 4-15.  Amil Rao, vice president and secretary of Frigoglass, affirms the company did not "manufacture, construct, assemble, market, distribute, and/or sell the allegedly defective cooler."  Roa Affidavit, DN 16-1 ¶ 3.  He further states Frigoglass has had no contact with Max Arnold, does not keep corporate officers in Kentucky, is not licensed and has no facilities in the state, and does not maintain any real property or other assets in the state.  Roa Affidavit, DN 16-1 ¶¶ 4-11.

The decision before the Court turns on how it should balance the factual allegations of the complaint with the affirmations by SFA and Frigoglass.  Though Plaintiffs have not offered affidavits of their own on these Defendants' responsibility for manufacturing and selling the cooler in question, the record is not without some plausible foundation for such a ruling.  SFA's corporate identification was affixed to the incident cooler.  SFA and Frigoglass have operations in the United States, and while Frigoglass denies it sold the cooler, the negative inferences of Roa's affidavit show the company may have other refrigeration products in Kentucky.  Roa

5

Affidavit, DN 16-1 ¶ 3 (limiting the scope of Frigoglass's activity in Kentucky to the cooler "that is subject of [this lawsuit]").

The plaintiff bears the burden of establishing jurisdiction. *Third Nat'l Bank v. Wedge Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir. 1989). The precise burden a plaintiff must shoulder depends on a court's response to a motion to dismiss for lack of personal jurisdiction. *Serras v. First Tennessee Bank Nat. Ass'n.,* 875 F.2d 1212, 1214 (6th Cir.1989). "Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). If the court decides to resolve a personal jurisdiction dispute on the motions and affidavits alone, the plaintiff need only make a prima facie showing of jurisdiction, meaning enough facts to avoid a motion to dismiss. *Welsh v. Gibbs,* 631 F.2d 436, 438 (6th Cir. 1980) (quoting *Data Disc, Inc. v. Systems Tech., Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)). If the court permits jurisdictional discovery or conducts an evidentiary hearing, the plaintiff is required to prove jurisdiction by a preponderance of the evidence. *Long John Silver's, Inc. v. DIWA III, Inc.*, 650 F. Supp. 2d 612, 619 (E.D. Ky. 2009); *Steelcase, Inc. v. Mar-Mol Co., Inc.*, 210 F. Supp. 2d 920, 924 (W.D. Mich. 2002). The district court has discretion to determine how best to resolve such an impasse. *Theunissen*, 935 F.2d at 1458.

Though the allegations in Plaintiffs' complaint are plausible on their face, the fact remains that Plainiffs are without a colorable narrative on the origins of the cooler and how the other distributor-defendants came to possess it. The exhibits offered by Plaintiffs might be enough to defeat these motions but they are an inadequate foundation to haul SFA and Frigoglass

into this lawsuit without some reticence by the Court.  As for SFA and Frigoglass, the Court remains skeptical about their proclamations that they have no connection to the malfunctioning cooler or the state of Kentucky.  The presence of SFA's corporate logo on the cooler and its claim that it did not construct the cooler "directly for" residents of Kentucky leaves the door ajar as to the company's involvement.  In addition, Frigoglass's operations in states adjoining Kentucky and its policy of on-site repairs to its equipment convinces the Court that the company has understated its contacts with the forum state.

Further, the parties have not divulged the framework of Frigoglass and SFA's corporate relationship.  The general rule holds that "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there."  36 C.J.S., Fed. Courts § 32 (2010); *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333 (1925).  Rather, courts consider various factors when determining jurisdiction over a parent, such as ownership or control of the subsidiary or sale of the parent's product by the subsidiary in the jurisdiction in question.  *Velandra v. Regie Nationale des Usines Renault,* 336 F.2d 292, 297 n. 21 (6th Cir. 1964).  The Court is presently unfamiliar with the corporate structure of Frigoglass and SFA.  It would be remiss to make any jurisdictional decision without this information.

The record is inadequate to reach a decision on these motions.  While Frigoglass and SFA have called into question portions of the pleadings, dismissal is not justified.  Alternatively, without answers on where the cooler came from and who made it, the Court cannot in good conscious retain jurisdiction over Frigoglass and SFA.  The Court will deny the motions to dismiss and permit a period of limited jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motions to dismiss (DN 15; DN 16) are DENIED.  **IT IS ALSO ORDERED that the Court will hold a telephonic conference on Friday, June 29, 2012 at 8:30 A.M. CT.**  There, the Court will set forth the discovery schedule for the dispute over personal jurisdiction.  The Court shall initiate the call.